William Leon HUTCHERSON,
Respondent.

v.

Dorothy Riley HUTCHERSON, Appellant.

No. WD 50749.

Missouri Court of Appeals,
Western District.

Nov. 14, 1995.

David A. Yarger, Woolsey & Yarger, Versailles, for Respondent.

Lori Levine, Carla G. Holste, Carson & Coil, P.C., Jefferson City, for Appellant.

Before SMART, LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

This is an appeal from a marriage dissolution. Wife Dorothy Hutcherson is appealing the valuation of the family business and other marital property, the distribution of the marital property, and the application of a local court rule which prevented her from present-

ing evidence of property value. Husband William Hutcherson is the respondent.

On appeal, an appellate court affirms the decree of dissolution if it is supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares nor applies the law. An appellate court accepts the evidence and inferences therefrom that are favorable to the trial court's decree and disregards all contrary evidence. A court defers to the trial court's assessment of witness credibility. *In re Marriage of Julian*, 868 S.W.2d 182, 184 (Mo.App.1994) (citations omitted).

The evidence viewed in the light most favorable to the decree is as follows:

Dorothy and William were married in 1980. Both parties had been married before. At the time of marriage, William worked for a construction company. Dorothy worked for Riley Marketing, her son Carter Riley's business. Riley Marketing produced and distributed maps printed with business advertising. William started working for Carter's company too. When Carter began having marital problems, his wife fired Dorothy and William; Carter quit the company and eventually divorced.

Dorothy and William started their own map business under the name of Missouri Creative Marketing (MCM) in 1983 in a hotel building which they purchased and renovated. After a period of time, Carter started working with them. Dorothy and William's joint tax returns for 1990 and 1991, introduced at trial, show an average profit of about $35,000 per year.

Dorothy and William began to have marital problems sometime before their separation on April 19, 1993. Dorothy got an *ex parte* order of protection against William after he threatened her, and she changed the locks on their home and on the MCM building.

Dorothy and William's 1992 joint tax return, filed by Dorothy after the parties began to have marital problems, showed a $2,000 loss by MCM. William testified that Dorothy prepared the return herself, when he was "not around." Despite the apparent loss, records introduced at trial showed phone and printing expenses for 1992 that were equal to the expenses in two previous years in which MCM had made a substantial profit.

Carter began Show–Me Map Service (Show–Me) in 1992 and immediately profited. Carter's success with Show–Me coincided with the drop in profits of MCM. At trial, William testified that Show–Me was run out of the same building as MCM. Map products bearing the name "Show–Me Map Company–Missouri Creative Marketing" were introduced at trial. Carter admitted also doing business under the MCM name.

On August 16, 1993, William filed a schedule of marital and non-marital property and a statement of monthly income and expenses. William listed and valued the parties' marital property including a lakefront home, the MCM building, various bank accounts, household goods, and personal goods.

According to local rule, Dorothy was then to have filed her own schedule and statement within 30 days. 26th Judicial Circuit Local Rule 68.2(b). When Dorothy, through her attorney, failed to file, subsection (c) became applicable as follows:

> If said Schedules are not filed within the thirty (30) day period, the noncomplying party shall be deemed to have accepted the Schedule filed by the other party and the stated values therein, and at trial the noncomplying party shall not be permitted to offer evidence contradicting the filed Schedules of all marital and non-marital property and Statement of monthly income expenses.

As the trial court noted on the record, not only did Dorothy not file the schedule and statement, but she also made no attempt to remedy the situation with the court. Opposing counsel made Dorothy's attorney aware of the noncompliance at a deposition on December 7, 1993, yet nothing was done. Additionally, Dorothy made no real reply to a request for production, although a partially filled-out statement of property was sent to William's attorney but was not filed with the court.

At trial, Dorothy's attorney attempted to put on evidence of value. The court, ruling that "the values stand as set forth on Peti-

tioner's statement of marital and nonmarital property," did not admit any evidence of value. Dorothy's attorney made no offers of proof.

William was awarded the lakefront home, an automobile, his personal property, household appliances, and some real estate. Dorothy was awarded the MCM building, the MCM business (including assets and goodwill), two automobiles, the bank accounts, her personal property, and household goods.

This appeal followed.

## I. Local Court Rule 68

█ This point will be addressed first because it affects two of Dorothy's other points. Local Rule 68, as discussed above, requires that when one party to a dissolution submits a schedule of property and a schedule of monthly income, the party must submit an opposing schedule and statement within 30 days or be "deemed to have accepted" the other party's determinations of property value and status (marital or non-marital).

Dorothy alleges that the trial court erred when it enforced the rule and kept out of evidence her evidence contradicting William's property statement. Dorothy submits that application of the rule was error because the local rule was "stricter than the rules of the Missouri Supreme Court."

Circuit courts are allowed to make rules which are not inconsistent with the Supreme Court Rules, the Constitution, or statutory law. Rule 50.01. Rule 61, "Failure to Make Discovery: Sanctions," provides remedies ranging from striking pleadings to dismissing the action or rendering a default judgment. The local rule is not inconsistent with any Supreme Court Rule, Constitutional provision, or statutory law this court can identify; appellant cited none in her brief.

Dorothy states that since the policy of the rule is to protect litigants from surprise and William's attorney received a partial property list in the mail, application of the rule was harsh and unnecessary. Without dwelling on evidence that the partial property list was worthless to William's attorney, this court finds it sufficient to note that the rule is also for the protection of trial judges and the system as a whole. As quoted in *In re Marriage of Sumner*, 777 S.W.2d 267 (Mo. App.1989):

> The trial courts are bombarded with dissolution cases which, by statute, [require] division of the [parties'] property.... The trial judge is often at the mercy of the lawyers. The trial judge cannot introduce evidence, yet he or she has a duty to make a fair division of the property. He or she must rely on the discovery and introduction of evidence by the parties' lawyers regarding the existence and value of property. Aside from default cases, the parties have at least an equal burden to carry on the matter of evidence of value in a dissolution.

Dorothy failed to comply with the rules necessary for a fair and smoothly-run trial. The trial court did not err by applying the appropriate local court rule. Point denied.

## II. Valuation

Dorothy's other two points of error concerning valuation will be considered together. Her first point is that there was insufficient evidence to support the court's finding that MCM, the parties' map business, had a value of $75,000. William's statement of property listed the property at this value; as explained above in I., it was deemed admitted by Dorothy when she failed to file her statement.

█ Dorothy complains that the evidence at trial was not sufficient evidence to value a business. The evidence of value, other than the statement that was deemed admitted, was William's competent opinion as owner of the business, evidence of the assets of the business, and some evidence of the business's potential as an ongoing business. Even if Dorothy's admission to the values in the property statement were not dispositive, which this court feels it is, there would still be enough evidence to support the trial court's discretion in valuing the property.

The second point is that the evidence was insufficient to support the valuation of bank accounts, household goods, appliances, and personal property. The values objected to were based upon the admitted values on William's property statement and other competent evidence. There was no abuse of discretion.

### III. Property Division

Dorothy's final point is that the trial court erred in dividing the marital property because it failed to consider 1) Dorothy's contributions from premarital property, 2) the conduct of the parties, 3) the economic circumstances of the parties, and 4) the separate property set aside to William, in accordance with § 452.330, RSMo (1994).

The trial court has considerable discretion in dividing the marital property. The court will interfere only if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. The fact one party is awarded a higher percentage of marital assets is not a per se abuse of discretion. *Gremaud v. Gremaud,* 860 S.W.2d 354, 356 (Mo.App.1993) (citations omitted).

Dorothy cites *Gremaud* for the proposition that the fact that separate property is transmuted into marital property does not preclude the trial court from considering the premarital contribution in dividing the marital property. Dorothy is correct; however, Dorothy does not demonstrate that the court failed to consider her contribution or otherwise abused its discretion.

Dorothy was awarded approximately 59% of the marital property, the other 41% going to William. Further, Dorothy received the bulk of the income-producing marital property in the form of Creative Marketing and its assets. The distribution was not so heavily weighted in favor of William as to amount to an abuse of discretion.

Likewise, there is no evidence that the trial court failed to consider the conduct of the parties, the economic circumstances of the parties, or the separate property awarded to William. The award was not an abuse of discretion. Point denied.

Accordingly, the judgment below is affirmed.

All concur.