**Joseph Ray DAVID, Respondent,**

v.

**Diane Faye DAVID, Appellant.**

No. WD 53161.

Missouri Court of Appeals,
Western District.

Submitted May 21, 1997.

Decided Oct. 21, 1997.

Cynthia A. Suter, Moberly, for appellant.

Gary L. Stamper, Columbia, for respondent.

Before BERREY, P.J., and SPINDEN and SMART, JJ.

SMART, Judge.

Diane David appeals the trial court's order dissolving her marriage to Joseph David. She claims the trial court erred in awarding Joseph, the noncustodial parent, the marital residence. She also contends that the court ignored both parties' desire for an equal property division and failed to take into account the tax consequences of liquidating the retirement funds assigned to her. Although we find that the trial court did not commit error as to the issues briefed, we nevertheless remand the case for reconsideration because of a mathematical error in the trial court's calculation of the assets assigned to appellant.

Joseph and Diane David were married on June 21, 1980. They reside in Moberly, Missouri, and have two daughters, now ages ten and five. Joseph is employed by the Thomas Hill Power Plant, earning approximately $37,000.00 per year. Diane is a teacher at a junior high school in the Moberly School District, earning about $24,000.00 per year. Joseph and Diane separated on April 19, 1995, after an incident during which Joseph hit a glass gun cabinet, breaking the glass. Diane testified that Joseph then took a loaded gun from the cabinet. Joseph admits he broke the cabinet, but denies taking a gun from the cabinet. Diane took the children to Joseph's sister's house. Diane and the children did not return to the marital residence.

Joseph and Diane described their marriage as being happy and tranquil until 1995. Diane attributed their marital problems to a change in Joseph's behavior resulting from an industrial accident he sustained at work in 1993. According to Diane, the accident affected Joseph's temperament. After the separation, Joseph underwent individual counseling, and later joint counseling with Diane.

Joseph filed a petition for dissolution of marriage on May 30, 1995. The case was submitted to the court on June 18, 1996. Joseph and Diane offered into evidence a stipulation regarding custody, visitation, and support, in which they agreed that they would share joint legal custody of the children, with Diane having primary physical custody. The agreement also provided that Joseph would be entitled to reasonable and

liberal visitation, and that Joseph would pay $710.00 each month as child support. The court approved the stipulation and incorporated it into the judgment.

## DIVISION OF PROPERTY

The main issue at trial was the division of property. Both parties testified that they wanted an equal division of property; however, both wanted the marital residence. The marital residence is located on approximately 50 acres in Randolph County. Over 40 acres of the land is tillable. Its appraised value was $86,500.00; however, each party testified to willingness for the court to value it at $96,500.00 if the farm were awarded to them. The first mortgage on the farm at the time of trial was $24,300.00. There was also a second indebtedness of $12,374 secured by a lien on the farm. This lien was created after separation, when Joseph and Diane together took out a $25,000.00 line of credit. Diane testified that she thought the line of credit funds would be used to put in a crop, and she did not know that Joseph was going to use the money to buy equipment. She testified that she did not receive any money from the line of credit. The balance on the line of credit at the time of trial was $12,374.00. Additionally, Joseph had borrowed $8,000.00 after the separation to purchase cattle.

Joseph had a pension plan (valued at approximately $28,300.00), and a 401(k) plan (valued at approximately $23,000.00).

At the close of the evidence, the court made oral findings dissolving the marriage and approving the stipulation regarding custody, visitation, and support. The court also said it would value the farm at $96,500.00, and specific items of personal property would be valued at the median difference between the values Joseph and Diane placed on the items. The court did not indicate the party to whom the farm would be awarded. The court directed the attorneys for both parties to submit proposed judgments resolving the remaining issues in the case, including the award of the farm, personal property items, attorney fees, and court costs. The court said it would sign the proposed judgment that was the most reasonable.

Soon thereafter, the court entered its order awarding Joseph the farm, the farm equipment, a truck, the cattle, and all household goods in his possession. The court awarded Diane all of Joseph's pension, accrued as of June 18, 1996, which it valued at $28,309.10, all of Joseph's 401(k), which it valued at $22,875.00, and all of the personal property in her possession. Further, the court ordered Joseph to pay all of the marital debt and to pay $3,500.00 towards Diane's attorney fees. The court awarded Joseph, after subtracting out the marital debt and Diane's attorney's fees, a net of $74,830.00 worth of property, and Diane, with no debt, a total of $59,182.00. Due to a mathematical error, the court showed Diane's assets as $62,781.00. Our calculation shows $59,182.00, using the court's values for the assets. The court declined to enter a judgment against Joseph to equalize the property division, stating that the court was declining to do so in light of Diane's separate $27,130.02 retirement benefit with the Public School Retirement System.

## THE MARITAL RESIDENCE

Diane's first point is that the trial court erred in awarding Joseph, the non-custodial parent, the marital residence. She contends that by giving Joseph the marital residence, the court ignored three of the statutory factors listed in § 452.330.1, RSMo 1994 [1] that it is supposed to consider when dividing property. Section 452.330.1 reads as follows:

1. In a proceeding for dissolution of the marriage or legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desira-

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

bility of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

Diane contends that the trial court failed to give adequate consideration to the desirability of awarding the family home to the custodial parent, Joseph's misconduct during the marriage, and the custodial arrangements for the minor children. She argues that had the trial court considered the fact that Joseph's violent behavior had caused her to leave the farm, the fact that she is the custodial parent, and that the children expressed a desire to return to the farm, the trial court would have most certainly awarded her the marital residence.

■ The appellate court will affirm the trial court's division of property unless it is so unduly weighted in favor of one party that it constitutes an abuse of discretion. *Lenger v. Lenger,* 939 S.W.2d 11, 14 (Mo.App.1997). The trial court has "great flexibility and far reaching power" in dividing marital property, and there is no exact formula for weighing the factors listed in § 452.330. *Woolridge v. Woolridge,* 915 S.W.2d 372, 376 (Mo.App. 1996).

■ Section 452.330 requires the trial court to weigh the desirability of awarding the marital residence to the custodial parent along with the other factors; it does not require that the trial court award the marital residence to the custodial parent. *Id.* It is apparent from the record that both parties strongly wanted the farm. Joseph said he would like the farm because farming is part of his heritage, and that he needs to farm the property to generate revenue to pay off the loans against the farm. There was evidence that the children were attached emotionally

to the farm, maintained a pony there, and had friends in the neighborhood. There was testimony concerning the fight that precipitated the separation, and a subsequent incident between Joseph and Diane's stepfather. There was testimony that Joseph withdrew $2,522.00 from their joint Merrill Lynch account after the separation without Diane's knowledge or consent, and that he applied the proceeds of their federal and state income tax refunds to the mortgages on the marital residence without Diane's knowledge or consent. There was also testimony, however, that Diane withdrew $1,750 from their joint account after separation. We presume that the trial court considered all of this evidence in making its division of property. *Monsees v. Monsees,* 908 S.W.2d 812, 815 (Mo.App.1995).

■ We evaluate the decision to award the marital home to Joseph in the light of the evidence, to determine if the award of the home to Joseph constitutes an abuse of discretion. We must defer to the trial court's determination of credibility, and view the evidence and inferences in the light most favorable to the judgment. *Kinder v. Kinder,* 922 S.W.2d 398, 400 (Mo.App.1996). Although credibility issues may have played some role in this determination, the factual disputes were not major in this case.

The main evidence supporting the award of the farm home to Joseph is the evidence indicating that Joseph is better equipped to farm the tillable land. Otherwise, there are apparent advantages to the children being able to return to the farm. The farm consists of the residential dwelling and approximately 50 acres, over 40 of which are tillable. Joseph stated that earnings from the farming efforts in previous years had been put back into the operation and improvement of the farm. Joseph enjoys farming the property and considers it a hobby. Diane asserted that she could handle the farm, and that she also had family members who could assist her. Both parties acknowledged that the children wanted to return to the farm to live. Joseph stated that, in his opinion, the children felt that way only because they had not seen as much of him as they wanted. Diane testified that Jennifer, the older daughter,

"had been counting down the days." She said the children liked the big yard, their playhouse and the pony they maintained at the farm. Diane testified that they had neighbors and friends near the farm and that they still went out to visit those neighbors. Diane testified that Jennifer liked catching the bus there with her neighbors and going to school with them. Joseph testified that the farm was six miles outside of Moberly, in a location he described as "remote." He said that in the country there was not as much fire and police protection as in town. Diane testified that the farm was not too remote or unsafe for her and the children. Diane said they had neighbors right across the road, and that she had never felt unsafe there. The farm was the only home the children had known prior to the separation. A drawing which Jennifer had made of the farm home was introduced in evidence as an indication of Jennifer's attachment to the home. Joseph suggested that if Diane were awarded assets other than the farm she could buy a nicer house in the city limits of Moberly.

The farm, in actuality, consists of two elements: 1) the dwelling house; and 2) the tillable acreage. The evidence strongly suggests that, if it were feasible, a reasonable disposition would be one that allowed the use of the tillable acreage to Joseph, and the use of the dwelling unit to Diane. Section 452.330 assumes that it is generally desirable to allow the primary custodian of the children to have the marital residence. Diane had separated, she indicated, out of fear, and Joseph did not dispute that assertion, although he denied that he had represented any actual threat to her safety. Generally, it is desirable to allow the custodial parent the continued use of the marital residence. Often, the grant of the marital residence to the custodial parent will assist the children in the time of difficult transition.

Perhaps the trial court allowed the farm to Joseph so that the farm, as a productive asset, would be more likely to be profitably utilized. The record fails to show whether the other reason provided by Joseph for denying Diane the farm—so that she and the children would have better police and fire protection—was a matter involving a signifi-cant difference between the two locations. Nor does the record substantiate Joseph's contention that Diane could buy a "nicer house" in town. Of course, the trial court was entitled to weigh and evaluate these contentions in its own discretion. Nevertheless, had the property lent itself to a division of the residence from the tillable acreage, and had either party suggested such a disposition to the trial court, we believe the trial court would have considered it. However, the record fails to show that it would have been feasible to divide the house from the tillable acreage. And, although we think we might have handled the disposition of the farm differently, we cannot reverse for that reason. Our review is only for abuse of discretion. The trial court was in the best position to make this decision. We cannot say that we are shocked by the decision of the trial court, or that we have a firm conviction that the court was wrong. Consequently, we defer to the trial court's discretion, and decline to reverse the trial court on this point.

## EQUAL DIVISION

Diane's next point is that the trial court erred in failing to make an equal division of the marital property as the parties requested, and in declining to follow the parties' wishes that the court resolve any discrepancies in the value of specific items by assigning the property the median of the two values. After adding up the parties' net assets, the court declined to enter a judgment against Joseph to equalize the difference in the property division because of Diane's $27,130.02 non-marital retirement funds through the Public School Retirement System.

Generally, the trial court's division of property does not need to be equal; it need only be fair. *Rombach v. Rombach*, 867 S.W.2d 500, 505 (Mo. banc 1993). Although the parties both stated in testimony that they wanted an equal division of property, there was no specific stipulation as to how this would be accomplished. Joseph wanted the entire 401(k) plan in view of the fact that Diane had a teacher retirement plan, while Diane wanted the 401(k) divided equally. The court is to consider the value of each

parties' nonmarital property when making its division of property. 452.330, RSMo 1994. Both parties acknowledged that Diane's retirement plan was separate property. Joseph first stated that he desired to keep his entire 401(k), a marital asset, to offset Diane's non-marital retirement plan, but then later testified that he would be willing to give up some of his 401(k) to equalize the property division. Then, in his proposed judgment, Joseph proposed that if he were awarded the house and farm, he would be willing for the court to award Diane all of the 401(k), together with a money judgment, to equalize the property division. All in all, it is clear that we cannot consider the trial court bound to any specific stipulation about an equal division of property. Nor is it clear that the parties had a true meeting of the minds about the meaning of an "equal division." Therefore, we deny the contention that the trial court violated a stipulation of the parties.

## THE TEACHER RETIREMENT ACCOUNT

 Section 169.572, RSMo (Supp. 1996) requires that Missouri teacher retirement accounts, which are in lieu of social security, be treated in the same manner as social security benefits. Social Security benefits are unassignable, and cannot be awarded as part of the division of property. *Hogan v. Hogan,* 796 S.W.2d 400, 407 (Mo.App. 1990). Thus, Diane's retirement account must be treated as separate property. *Kieninger v. Catlett,* 854 S.W.2d 59 (Mo.App. 1993). The court is entitled to consider the fact that the separate property of one party is greater than that of the other. *Riaz v. Riaz,* 789 S.W.2d 224, 228 (Mo.App.1990). However, in the case of teacher retirement accounts, the court is not to permit the consideration of the retirement account to "materially impact" the division of property. *Mallams v. Mallams,* 861 S.W.2d 822, 825 (Mo.App.1993). In *Mallams,* wife had a teacher retirement account of about $40,000, and husband had two teacher retirement accounts of about $39,000. The effect of excluding all the accounts from the division of property was to reduce wife's distribution to $44,000 and husband's to $71,000. The wife's

share was reduced by about half while husband's was reduced by only one-third. Even when the teacher retirement accounts were included as marital property, the husband was receiving more than wife, but the discrepancy between husband and wife was greater ($30,000) than before ($25,000) even though the marital estate being divided was smaller. The court held that the inclusion of the accounts materially impacted the division of property, and reversed the trial court. *Id.* at 825. In this case, the court relied on the teacher retirement account as the basis for declining to enter an equalizing judgment, which the court believed would be approximately $8,000.00 to offset the $16,000.00 difference. Whether or not a $16,000.00 difference in the scheme of this particular distribution constitutes a "material impact" is not precisely the issue here because the difference between the two distributions was actually more like $19,000.00. Whether a $19,000.00 difference in distributions due to consideration of the teacher retirement account in the context of a total marital estate of $140,000.00 violates the "material impact" rule of *Mallams* is not clear. Perhaps, all other things being equal, it would. In this case, however, unlike in *Mallams,* there was testimony that Diane would be able to draw social security in addition to her teacher retirement funds because she had been married to Joseph more than 10 years. The trial court, in evaluating the effect of the teacher retirement account, was entitled to consider the fact that Diane would get some benefit from Joseph's social security account, and that Joseph would not get any benefit from Diane's teacher retirement account. In *Mallams,* where both parties were teachers, it was apparently presumed that neither party would be able to draw social security, because their teacher retirement accounts were provided in lieu of social security. In view of these facts, we believe *Mallams* is distinguishable, and we conclude that Diane has not shown that the court abused its discretion in declining to establish an offsetting judgment to equalize the distribution. However, in view of the fact that there was a mathematical error in the court's calculations of Diane's distribution, and because we can-

not be confident the trial court would have reached the same decision if it had been aware of the fact that Diane's distribution was approximately $59,000.00 rather than approximately $62,000.00, we will remand this case to the trial court for its reconsideration of the issue.

## THE DIVISION OF ASSETS

 Diane was awarded the 1989 Dodge Caravan valued at $4,500.00, household goods valued at $3,498.00, all of Joseph's pension, and all of Joseph's 401(k). The pension and the 401(k) are the only source of liquid assets available to Diane from which she could obtain housing for herself and for the children. No evidence was presented at trial as to the liquidation value of the pension and 401(k) if cashed. Diane presumably will need cash in hand if she wishes to buy a "nicer house," as Joseph suggested in his testimony she could do. If she cashes the pension plan or 401(k), Diane will face tax consequences associated with an early distribution which will affect the value of the distribution. The Internal Revenue Code, 26 U.S.C.A. § 72(t)(1) (Supp. 1997) establishes a ten-percent tax penalty on early distribution of qualified retirement plans in addition to the normal tax amount which must be paid on the distribution itself. This matter was not brought to the trial court's attention, however, and is raised for the first time on appeal. Therefore, we cannot convict the trial court of error in failing to take the tax consequence of liquidation into account. Rule 84.13(a). Point is denied.

## CONCLUSION

The judgment is vacated and the case is remanded to the trial court. On remand, the trial court shall reconsider the property distribution in light of the fact that there was a mathematical error in calculating Diane's distribution. Also, because property issues are often interrelated, the court may, in reconsidering the property division, make such other adjustments which it deems to be necessary or appropriate. The court may also be guided by any other arrangements for the division of property which the parties may propose by stipulation, and may re-design the entire division of property accordingly, all in accordance with the trial court's discretion.

BERREY, P.J., and SPINDEN, J., concur.