**Victor Mark DeMAYO, Respondent,**

v.

**Leila Myrtle DeMAYO, Appellant.**

**No. WD 56482.**

Missouri Court of Appeals,
Western District.

Jan. 25, 2000.

---

Dennis J. Campbell Owens, Kansas City, for appellant.

Rebecca Lake Overman, Independence, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, HAROLD L. LOWENSTEIN, Judge and EDWIN H. SMITH, Judge.

JOSEPH M. ELLIS, Judge.

Leila and Mark DeMayo were married on August 30, 1986. They have two children together, Jessica, 12, and Lauren, 10, and Leila has children from prior marriages. On May 15, 1996, Mark filed his Petition for Dissolution of Marriage and on July 16, 1998, a two-day hearing commenced. A judgment was entered and the marriage was dissolved on September 17, 1998. Leila appeals the judgment of the trial court complaining that the evidence does not support the division of the marital estate.

During the marriage, Leila was employed as a teacher by the Blue Springs School District and for the 1998–99 school year, she expected to earn a salary of $42,000 with an additional $6,200 in extra curricular and career ladder pay. In addition, Leila had accrued retirement benefits from teaching that totaled approximately $61,000. Mark moved from job to job during the marriage, working primarily as a sales representative, and earning at the most, $30,000 per year until he was laid off in 1990. Mark started his own business, Mayflower Fiberglass, a fiberglass fabricator, in 1990 which yielded an average of $10,000 per year in income for Mark. Mayflower Fiberglass remained a sole proprietorship throughout the marriage and there was disagreement between the parties regarding whether that money generated from the business was used to provide family support.

At the time of their marriage, the couple resided in Raytown, Missouri, in a home owned by Leila prior to the marriage.

Within a year, the parties had purchased Lot N61 at Lake Lotawana using the $19,-500 they received from the sale of Leila's home in Raytown for the down payment. Lot N61 was purchased in the joint names of Leila and Mark. In 1993 the parties sold Lot N61 and purchased Lot N7 at Lake Lotawana for $125,000. Neither party testified as to what monies were used to purchase Lot N7 or whether Lot N61 produced a profit when it was sold. Lot N7 was also purchased in the joint names of Leila and Mark DeMayo.

In May 1996, after the dissolution action began, Leila remained in the family home and Mark moved in with his parents. The parties listed the family home with a realtor in February 1997 for $275,000 after Mark and Leila both completed numerous repairs to the house preparing it for sale. In August 1997, the parties received an offer to buy the house for $200,000 and Mark authorized the realtor to make a counter offer for $225,000 but Leila would not approve the counter offer, nor accept the original offer until after the couple appeared in court on the dissolution action. The realtor made no further efforts to market the property in light of Leila's refusal to cooperate.

The petition for dissolution was heard approximately a year later and at that point, the property and home had deteriorated. Mark testified that when he entered the property in December 1997, the carpeting in the living room was torn and the wood floor was showing through, there were holes in the ceiling of the kitchen and the playroom, and the boatlift had been removed from the dock and sold. Many of the home furnishings had been damaged or were missing, and Leila had deferred two mortgage payments and the loan was 30 days in arrears at the time of trial.

In addition to real property, the couple acquired personal property throughout the marriage. Mark testified that in July 1996, Leila loaded the couple's minivan with personal property from the family home and moved it to a concealed location.

Leila testified that she had held a garage sale and sold some of the household furnishings without informing Mark of the sale, and she did not share any of the proceeds with him.

In June 1997, Mark lost the lease on his business property and the couple refinanced their home to generate enough money to purchase property to relocate the business. Instead of using the money to purchase property for the business, Leila used the money to purchase cars for her two oldest children who were not children of the marriage. Mark was forced to operate his business from many temporary locations including his father's marina. Mark testified that the lack of a permanent business location resulted in his business being very slow. In addition, two months after Mark filed for divorce, Leila broke into Mark's business and took a camera, a golf putter, $800, and his briefcase which contained his business records, ledgers, checkbook and account records. After being confronted at a deposition, Leila admitted to taking the items listed above and returned some, but not all of those items to Mark.

The trial court ordered the parents to have joint custody of the two girls, giving Leila primary physical custody with extensive temporary custody to Mark. Mark was ordered to pay child support in the amount of $212 per month. The court also awarded Leila her non-marital property which included her retirement account with the Missouri State Teachers Retirement Association valued at $61,000, other personal property valued at $4,200, and a few items of personal property that were not valued by the court. Leila was awarded the following marital property: "1996 Pontiac Grand Am, value unknown; Commerce Bank, $500; Mercantile Bank $10; household goods in her possession; boat lift, $100 [and]...the real estate located at N7, Lake Lotawana, Missouri." Mark was awarded his non-marital property valued at $7,474 in addition to a few pieces of non-marital property that was not valued by

the court and the following marital property: "1985 Blazer, $1,500; 1986 Ozark boat and trailer, valued at $4,000; Allan Bank account, $100; business tools and compressor, $3,000; guns, $2,500; couch, TV, bed tables, valued at $950." The court then equalized the judgment by ordering Leila to pay Mark the sum of $26,433. In order to distribute the equity in the real estate, Leila was also ordered to execute a promissory note to Mark in the sum of $67,525 carrying simple interest of 5% per annum and payable on August 1, 2000.

The debts acquired during the marriage were distributed as follows: Leila was ordered to pay the mortgage on the residence in the amount of $115,000 along with the encumbrances on her automobile totaling $11,000. Mark was ordered to pay his medical bills equaling $700 and his I.R.S. tax debt in the amount of $950.

Leila's sole point on appeal claims the trial court erred in distributing the marital property. She argues the court erred in ordering her to pay Mark $26,433 immediately to equalize the judgment, and $67,525 in August of 2000 for his equity in the home. Her arguments are threefold. First, she argues the distribution reflects that the court improperly considered her teacher's pension fund. Secondly, she contends the court failed to consider the disproportionate contributions the parties made to buying and maintaining the marital property. And finally, Leila claims the trial court's order that she pay Mark $67,-525 in August of 2000 is unsupported by evidence that she is capable of making such a large payment in the future when circumstances of the future are unknown.

■ The trial court decision in a dissolution proceeding will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Webb v. Fox*, 978 S.W.2d 16, 19 (Mo.App.

W.D.1998). Property distribution is left to the discretion of the trial court and we will interfere only if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Finnical v. Finnical*, 992 S.W.2d 337, 343 (Mo. App. W.D.1999).

The trial court's division of property in a dissolution action is controlled by § 452.330.1[1] which states in pertinent part:

> **Disposition of property and debts, factors to be considered.—1.** In a proceeding for dissolution of the marriage or legal separation,...the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:
>
> (1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;
>
> (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
>
> (3) The value of the nonmarital property set apart to each spouse;
>
> (4) The conduct of the parties during the marriage; and
>
> (5) Custodial arrangements for minor children.

■ . We will first address the issue of whether the trial court erroneously considered Leila's teacher's retirement pension when it distributed the marital estate. In a dissolution of marriage proceeding, the court must award to each spouse their non-marital property and then the court must divide the marital property in a just manner after considering all relevant factors. § 452.330.1. The trial court is granted

---

**1.** All statutory references are to RSMo Cum. Supp.1998 unless otherwise indicated.

great discretion in determining the distribution of marital property and a just division is not necessarily always an equal division. *Gismegian v. Gismegian,* 849 S.W.2d 201, 203 (Mo.App. E.D.1993). One of the factors the court is to consider in distributing the marital estate is the value of the non-marital property that is set apart to each spouse. § 452.330.1(3).

Missouri teacher retirement accounts are received in lieu of social security and in a dissolution of marriage proceeding, they are to be treated in the same manner as social security benefits. § 169.572. Teacher retirement accounts, like Social Security benefits, are unassignable and cannot be awarded as part of the division of property. *David v. David,* 954 S.W.2d 611, 616 (Mo.App. W.D.1997). "The court is entitled to consider the fact that the separate property of one party is greater than that of the other. However, in the case of teacher retirement accounts, the court is not to permit the consideration of the retirement account to 'materially impact' the division of property." *Id.* (citations omitted).

The progression of the law in Missouri relating to teacher's retirement benefits and their division in dissolution actions is as follows: In 1993, the Eastern District of this court decided *Gismegian,* 849 S.W.2d 201, which declared teachers' retirement funds should be classified as non-marital property for purposes of property distribution. *Id.* at 204. In *Gismegian,* the court found the erroneous classification of the teachers' retirement fund as marital property had a material effect on the property distribution because when the retirement fund was eliminated from the equation, the value of the property awarded to the parties differed by $44,000.[2] *Id.* We followed the court's analysis in *Gismegian* when we decided *Kieninger v. Catlett,* 854 S.W.2d 59, 60 (Mo.App. W.D.1993).

Later in 1993, the Eastern District followed *Gismegian* with *Mallams v. Mallams,* 861 S.W.2d 822 (Mo.App.W.D.1993), which involved a couple who each had a teacher's retirement fund. The court determined the funds were to be characterized as separate property and their classification as marital property was error because as such, they materially impacted the overall distribution of marital property. *Id.* at 824. It was a material impact because when the retirement funds were excluded, Wife's net distribution was decreased by almost half, while Husband's distribution was reduced by approximately one-third. *Id.* at 824–25.

In *David,* we refused to apply *Mallams* because its facts were distinguishable from the facts of *David. David,* 954 S.W.2d at 616. In *David,* only the Wife had a teacher's retirement fund and the court relied on this fund as the basis for declining to enter an equalizing judgment. *Id.* There was testimony in *David* that the Wife would be able to draw Social Security from her Husband in addition to her teacher retirement funds, whereas in *Mallams,* both the Husband and Wife had teacher retirement funds which are in lieu of Social Security, so neither could draw Social Security. *Id.* Because Wife could receive benefits from Husband's Social Security, and Husband would never benefit from Wife's retirement fund, we could not find error in the trial court's consideration of Wife's non-marital teacher's retirement fund in making its division of property. *Id.* We did, however, find an error in the calculation of Wife's distribution and for that reason remanded the case to the trial court. *Id.* at 616–17.

In 1998, the Eastern District decided *Ludwinski v. Ludwinski,* 970 S.W.2d 892 (Mo.App. E.D.1998). In the division of property, Wife was granted her teacher's retirement plan which was given no value by the court. *Id.* at 893. The appellate court found that the trial court erred in

---

**2.** The court found the $44,000 difference to be material in light of the lower court's determination that an equal division was just in this case. *Id.*

classifying the retirement plan as marital property. *Id.* at 894. The case was remanded and the trial court was ordered to designate the retirement plan as separate property, give it a value, and then determine whether this change materially impacts the property division of the marital estate. *Id.* In addition, the facts of *Ludwinski* are similar to those in *David*, where Wife was going to receive benefits from Husband's Social Security, but Husband would receive no benefits from Wife's teacher's retirement fund. *Id.* at 895. The court followed the reasoning of *David* and found that in these circumstances, it is proper for the trial court to consider the retirement fund as well as the social security benefits in making its property distribution. *Ludwinski*, 970 S.W.2d at 895.

Finally, we decided *Holt v. Holt*, 976 S.W.2d 25 (Mo.App. W.D.1998) which involved a Husband teacher with a substantial teacher's retirement fund. Husband appealed the trial court's distribution of property claiming the court improperly considered his teacher's retirement fund in its division of the marital estate. *Id.* at 28. In this case, we stated:

> [A]lthough not divisible, the Social Security benefits of one spouse, or potential benefits, may be considered like any other separate property by the court in determining an equitable division of marital property. Thus, while unassignable as marital or separate property, the benefits or potential benefits are economic factors to be considered, along with other factors in the disposition of marital property and the award of allowances.

*Id.* at 29 (citations omitted).

In the dissolution decree, the court awarded Leila non-marital property, consisting of her teacher's retirement fund valued at $61,000, and miscellaneous items of personal property valued at $4,200. She was also awarded marital property, consisting primarily of the marital residence, with a total value of $236,000. She was also ordered to pay $219,958 which included part of the marital debt, and payments to Mark to equalize the judgment and reimburse him for his equity in the family home. Leila was left with a net marital property distribution of $16,042. Mark was awarded his personal property valued at $7,474 and marital property consisting of personal property valued at $12,050, a promissory note on the family home in the amount of $67,525, and a $26,433 lump sum to equalize the judgment. Mark was also ordered to pay some of the marital debts totaling $1,650, resulting in a distribution of marital property valued at $104,358.00. Thus, Leila was awarded approximately 13.45% of the marital property and Mark received approximately 86.55%.

■ In its judgment, the court stated, "[Leila] has a Missouri State Teacher's retirement plan which is valued at $61,000, and is designated as non-marital property, however, the Court will take into consideration the availability of this non-marital property in making a property division." As outlined earlier in this opinion, Missouri case law allows the trial court to consider a teacher's retirement fund as a relevant factor under § 452.330; however, when its inclusion in the property distribution causes a material impact on the division of property, its consideration is erroneous. *Ludwinski*, 970 S.W.2d at 893; *David*, 954 S.W.2d at 616; *Mallams*, 861 S.W.2d at 824; *Gismegian*, 849 S.W.2d at 204. It is apparent the trial court not only took account of Leila's teacher's retirement fund in its division but in effect treated the fund as marital property. This had a substantial material impact on the amounts and manner of division of the property. As such, we find the trial court's division of the marital property erroneous requiring reversal of the judgment as to the division of marital property.

■ Since the case is being remanded for an equitable division of the marital property, we need not address other contentions regarding the amounts and manner of division of the marital property.

The trial court will have the opportunity on remand to consider the parties' arguments regarding the appropriate manner and method of division. However, for the sake of judicial economy, we will address Leila's contention that the court failed to consider the disproportionate contributions the parties made to buying and maintaining the marital property, and erred in classifying it as marital property.

■■■ Property is non-marital if it was owned by one spouse prior to the marriage and that spouse retained separate title to it after marriage. *Kinsey–Geujen v. Geujen,* 984 S.W.2d 577, 579 (Mo.App. W.D. 1999). If the owner spouse adds the other spouse's name to the property's title or retitles it jointly, a rebuttable presumption is created that the property has been transmuted into marital property. *Id.* This presumption can only be rebutted by clear and convincing evidence that the owner spouse did not intend to convert the property to marital property. *Id.* Even if the trial court finds that separate property has been transmuted into marital property, this determination does not prohibit the court from considering the premarital contributions of each spouse. *Mellon v. Mellon,* 973 S.W.2d 570, 573 (Mo.App. W.D. 1998). "Although transmutation determines the character of the property (whether it is marital or separate), it does not determine the division of the property (how much should be apportioned to each spouse)." *Id.* After classifying the property as marital, the court should look at the factors listed in § 452.330 for guidance in dividing the property. *Waisblum v. Waisblum,* 968 S.W.2d 753, 756 (Mo.App. W.D.1998). No formula exists to determine the weight that should be given each of the factors listed in the statute. *Id.* Those factors include:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.

Leila owned a home in Raytown, Missouri, before her marriage to Mark and upon marrying him, the couple moved into this house. The couple then sold Leila's house and applied the proceeds to a home on Lot N61 at Lake Lotawana which was titled jointly in both Mark and Leila's names. This joint titling created the presumption that this home was marital property. Then, the parties sold Lot N61 and purchased Lot N7 at Lake Lotawana which was titled jointly in both their names and is also presumed marital property. There is no evidence to prove Leila intended to keep the proceeds from her Raytown home as separate property through the course of purchasing a new home, selling it, and then purchasing another home. Likewise, there is no indication in the record that the trial court failed to take account of the disproportionate contributions the parties made to buying and maintaining the marital property. Accordingly, there was no abuse of discretion and the trial court did not err in finding the marital home to be marital property.

The judgment of the trial court as to the division of property is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.