**Johnna L. BOOTH (Greene), Appellant,**

v.

**Daniel J. GREENE, Respondent.**

**No. WD 59788.**

Missouri Court of Appeals,
Western District.

May 28, 2002.

Grace S. Day, St. Joseph, for appellant.

Michele C. Puckett, Cameron, for respondent.

Before ULRICH, P.J.,
BRECKENRIDGE and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

Johnna Booth (Greene)[1] appeals from the trial court's judgment dissolving her marriage to Daniel Greene. On appeal, Ms. Booth contends that the trial court erred in (1) awarding Mr. Greene $5000 for non-marital tools that she gave to her brother; (2) awarding equal shares of the pre-marital increase in value of Ms. Booth and Mr. Greene's house and real property; (3) awarding equal shares of Ms. Booth and Mr. Greene's house and real property. Because the tools that the court valued to arrive at $5000 were marital tools, the trial court erred in awarding $5000 to Mr. Greene for non-marital tools. The trial court did not err in awarding equal shares of the pre-marital increase in the value of the house and real property, nor did it err in awarding equal shares of the marital residence.

The judgment of the trial court is affirmed, in part, and reversed and remanded, in part.

**Factual and Procedural Background**

This court views the facts in an appeal from a dissolution of marriage judgment in the light most favorable to the judgment,

---

1. Ms. Booth's legal last name at the time of the divorce was Greene, but throughout her marriage she went by the last name of Booth. For clarity, this court will refer to her as Ms. Booth.

and disregards any contrary evidence. *Hutcherson v. Hutcherson,* 909 S.W.2d 403, 404 (Mo.App.1995). In May 1996, Ms. Booth and Mr. Greene were married. Prior to the marriage that this appeal concerns, the parties were married for sixteen and one-half years. That marriage was dissolved in July 1993. On September 21, 1994, Ms. Booth and Mr. Greene purchased a home for $28,500. Ms. Booth paid the down payment and the closing costs for this home. Ms. Booth used the money from the equity she received from the parties' former home for these costs. The parties titled this house jointly. In October 1994, Ms. Booth and Mr. Greene purchased thirty-two acres adjoining the home for $25,000. Again, Ms. Booth paid the down payment from monies she received from the equity in the parties' former home, and the property was titled jointly. Shortly thereafter, the parties began residing in the home together.

When they purchased the house, both parties worked full-time at the Western Missouri Correctional Center, making approximately equal salaries. In August 1995, Ms. Booth began working four more hours in the evening, making fifteen dollars an hour. Mr. Greene inquired about a job at a local convenience store, but he was not hired. It was very unlikely that Mr. Greene could have found a job that paid fifteen dollars an hour. While Ms. Booth worked her second job, Mr. Greene worked making improvements to the house.

Mr. Greene made considerably more improvements to the house than Ms. Booth. In fact, the parties agreed that Ms. Booth would work part-time in the evenings, and Mr. Greene would work on improving the house. Mr. Greene replaced the guttering on the house; built and replaced the soffit materials on the southeast porch; gutted the upstairs; rewired the house and the

wooden and metal garages; replaced the water heater; replaced duct work for the furnace and air conditioner; repaired and leveled the kitchen floors; replaced the plumbing in the kitchen and utility room; repaired and replaced support beams for the southeast porch; painted the walls and ceilings downstairs; removed old windows and closed in the openings; remodeled the wooden garage; installed ceiling fans; and built shelves for the closets. In addition, Mr. Greene spent four to six hours a week mowing the lawn. Mr. Greene and Ms. Booth both stripped the walls down to the studs; insulated the roof; replaced an old breaker; repaired and leveled the upstairs floors; replaced the stairwell; removed old siding; poured the concrete walks, patio and the floor in the wooden garage; tore out the southeast porch; scraped and painted the wooden garage; and landscaped. Occasionally, members of either Ms. Booth's or Mr. Greene's families would help with the improvements. On a few occasions, Ms. Booth and Mr. Greene hired a contractor to make improvements to the house. Mr. Greene's mother loaned Ms. Booth and Mr. Greene $6000 to put in cabinets and make other home improvements. Ms. Booth made the mortgage payments on the house, and Mr. Greene paid the utilities. They both paid for supplies used to make the improvements to the house on his credit card. In doing so, Mr. Greene incurred over $16,000 in credit card debt.

While the parties were married, Ms. Booth had a total disregard for Mr. Greene's feelings, and on numerous occasions, she told him that she did not love him. She claimed that she and Mr. Greene were entering into a fifty-fifty business deal, and that the only reason that they remarried was because she did not think she was setting a good example for her younger nieces and nephews by cohabiting with a man to whom she was

not married. On the night the parties separated, Ms. Booth attended a hot tub party, without Mr. Greene, in which she was in the hot tub with another man. Ms. Booth continually criticized Mr. Greene's work around the house as minimal and inferior. After the parties separated, Ms. Booth gave her brother marital property consisting of Mr. Greene's tools, which she claimed was payment for work her brother had done to improve the house.[2] Around the time of the first pre-trial conference in the dissolution action, Ms. Booth contacted the county prosecutor and instigated criminal proceedings against Mr. Greene for several charges of violating an ex parte order. The prosecutor, subsequently, filed a nolle prosequi of all charges. Similarly, shortly after a pre-trial conference in August 2000, Ms. Booth instigated the filing of criminal charges against Mr. Greene for third degree assault for Mr. Greene's conduct on October 24, 1999, the night the parties separated.

When Ms. Booth and Mr. Greene separated, Mr. Greene moved out of the house. On October 26, 1999, Ms. Booth filed a petition for dissolution of marriage. The court held a trial, and on November 7, 2000, the court sent a letter to the parties explaining its ruling and asking Ms. Booth to submit a proposed judgment with Mr. Greene's approval. On January 16, 2001, the court entered its judgment dissolving Ms. Booth and Mr. Greene's marriage. The court found that the present fair market value of the house and real property was $117,700, of which $78,485.74 is equity. There were two loans that were secured by the house and surrounding real property. The remaining balance on one loan was $34,290.25, and the balance on the other was $4,924.01. The court further found that the increase in the value of the house was due to extensive remodeling. The court ordered, *inter alia*, that the real property and all other property that was not specifically identified in the judgment be sold by public sheriff's sale. The court ordered that the proceeds from the sheriff's sale be applied in this order:

a. The reasonable and necessary expenses of the sale.

b. The two loans secured by the property as described in evidence for $34,290.25 and $4,924.01.

c. The $6,000.00 loan to the parties made by Wilma Greene.

d. The full balances owing on payment of the credit card debts with Chase Visa card and First USA Visa card as described in evidence.

e. The unpaid balance of the loan on the tractor shall be paid as described in evidence.

f. The remaining proceeds shall be divided between the parties in the following manner:

   i. $5,000.00 to be paid to respondent to reimburse him for his separate nonmarital tools consisting of radial saw, table saw, air compressor, sand blaster, grinder, given by petitioner to her brother without permission or consent of respondent.

   ii. The remaining proceeds shall then be equally divided between petitioner and respondent.

Ms. Booth filed a motion for a new trial or in the alternative to amend the judgment. The trial court denied the motion. This appeal followed.

**2.** Prior to Ms. Booth and Mr. Greene's separation, her brother had worked on improve-

ments to the house without being paid.

## Standard of Review

■ This court will affirm the trial court's judgment of dissolution of marriage if it is supported by substantial evidence, it is not against the weight of the evidence, and does not erroneously declare or apply the law. *Hutcherson*, 909 S.W.2d at 404. This court views the evidence and any inferences therefrom in the light most favorable to the trial court's judgment and disregards all contrary evidence. *Id.* This court defers to the trial court's determination of the credibility of witnesses. *David v. David*, 954 S.W.2d 611, 614 (Mo.App. 1997).

■ The trial court has substantial discretion in dividing marital property, and appellate courts will not interfere unless the division is so heavily weighted in favor of one party so as to amount to an abuse of discretion. *Hutcherson*, 909 S.W.2d at 406. The trial court abuses its discretion only if its "ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Wright v. Wright*, 1 S.W.3d 52, 57 (Mo.App.1999). " 'If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion.' " *Id.* (quoting *Collins v. Collins*, 875 S.W.2d 643, 647 (Mo.App. 1994)).

## Error In Award of $5000 For Tools

In her first point on appeal, Ms. Booth alleges that the trial court erred in awarding Mr. Greene $5000 for the tools she gave to her brother. Ms. Booth contends that the award of $5000 is not supported by the evidence because Mr. Greene valued the tools at only $1485. In addition, Ms. Booth claims that the designation of the tools as non-marital property is against the weight of the evidence because the

evidence at trial was that the tools were marital property.

With regard to the $5000 for the tools, the trial court stated in its judgment:

> The remaining proceeds [from the public sale of marital property] shall be divided between the parties in the following manner:
>
> i. $5,000 to be paid to respondent to reimburse him for his separate non-marital tools consisting of radial saw, table saw, air compressor, sand blaster, grinder, given by petitioner to her brother without permission or consent of respondent.

■ If, in determining the value of property, the trial court's valuation is within the range of evidence, the valuation is not erroneous. *Creech v. Creech*, 992 S.W.2d 226, 230 (Mo.App.1999). If there is conflicting evidence, this court gives deference to the trial court's decision. *See Endebrock v. Endebrock*, 916 S.W.2d 456, 459 (Mo.App.1996). If there is not sufficient evidence of the value of the property, this court will remand to the trial court with instructions to hear additional evidence. *Id.*

In dividing Ms. Booth's and Mr. Greene's property, the trial court specifically listed five tools that Ms. Booth gave to her brother. Mr. Greene contends that the trial court did not intend to limit the tools to the five listed in the judgment. In support of this argument, Mr. Greene directs this court to the letter the trial court wrote to the parties on November 7, 2000, outlining the court's intended division of property. The letter states, "Any proceeds remaining thereafter shall be divided between the Parties in the following manner: $5,000.00 shall be paid to Respondent to reimburse him for his separate non-marital tools (e.g., radial saw, table saw, air compressor, sandblaster, grinder) given

by Petitioner to her brother without permission or consent of Respondent." In its judgment, however, the court did not use "e.g." Instead, the court used the phrase "consisting of" before listing the tools.

■ To determine which tools the court was valuing at $5000, this court must interpret the judgment. "When undertaking to understand the meaning of a judgment, this court makes its own independent assessment." *State ex rel. Div. of Child Support Enforcement v. Hill,* 53 S.W.3d 137, 141 (Mo.App.2001). If a judgment is not ambiguous, "this court will construe the judgment[] according to the plain meaning of the language used." *Am. Family Mut. Ins. Co. v. Hart,* 41 S.W.3d 504, 509 (Mo.App.2000). The term "consisting of" is not ambiguous. Therefore, this court will construe the judgment using the plain meaning of "consisting of." The term "consisting of" makes clear that the list is exhaustive.[3] Because the court used the term "consisting of," this court finds that the court intended the $5000 award to encompass the value of only the five tools listed in the judgment.

Ms. Booth and Mr. Greene presented conflicting evidence as to the value of those five tools. Ms. Booth contends that the combined value of the tools was $985. Mr. Greene claims that the combined value of the tools was $1485. Neither party presented evidence that the value of the five tools was close to $5000. Nevertheless, this court is permitted to enter an award if there is sufficient evidence to support a lower value of the property. *Endebrock,* 916 S.W.2d at 459.

■ This court need not do so in this case, however, because the trial court's property award must be remanded for another reason. In its judgment, the trial court stated that the five tools were non-marital property. Yet both Ms. Booth and Mr. Greene listed those five tools as marital property in their respective statements of marital and non-marital property and liabilities. Moreover, during his testimony, Mr. Greene referred to an exhibit entitled, "Marital Property to be Set Aside to Dan." The exhibit listed, among other items, the radial saw, table saw, air compressor, and grinder.

There was no evidence that the tools were non-marital property. Therefore, the trial court erred when it ruled that the tools were non-marital property. The $5000 award to Mr. Greene for the tools is reversed and remanded to the trial court to assign a value to the tools based upon the evidence presented, and include that value in its division of the parties' marital property.

### No Error in Awarding Equal Shares of Pre–Marital Increase in Value of House and Real Property

■ In her second point on appeal, Ms. Booth asserts that the trial court erred in awarding an equal share of the pre-marital increase in value of the house and adjoining real property. She claims that the trial court misapplied the law, the judgment is not supported by substantial evidence, and the judgment is against the weight of the evidence. She contends that (1) the property was acquired prior to marriage; (2) there was no evidence that the parties intended to remarry at the time property was acquired or at the time improvements were made; (3) Ms. Booth paid the down payments and closing costs;

---

**3.** The term "consist" is defined as "to be made up or composed." THE AMERICAN HERITAGE COLLEGE DICTIONARY 297 (3d ed.1993). Under the usage note for the word "include," the dictionary provides, "When one wants to make clear that the listing is exhaustive ... the use of *comprise* or *consist* will avoid ambiguity." *Id.* at 687.

(4) Ms. Booth made all mortgage payments prior to the parties' remarriage; (5) Ms. Booth made significantly more of a financial contribution to the improvements on the property; (6) Ms. Booth and Mr. Greene made equivalent physical contributions to the improvements on the property.

The facts of this case are strikingly similar to the facts of a prior case from this court, *Cuda v. Cuda,* 906 S.W.2d 757 (Mo. App.1995). In *Cuda,* the parties purchased a home "four or five years" prior to marriage, and they titled the home jointly. *Id.* at 758. The husband paid the entire down payment with separate funds, and the wife contributed to the closing costs. *Id.* at 758–59. The husband and wife signed a promissory note for the balance of the purchase price. *Id.* at 759. The wife contributed to the monthly mortgage payments prior to the marriage, and after the marriage but before the divorce, the wife "assisted in the maintenance and improvement of the house." *Id.*

This court found that even though the husband made the entire down payment with his separate funds, by titling the property in their joint names, the husband "expressly bestowed upon the wife a joint tenancy interest in the real estate acquired before marriage." *Id.* Moreover, the evidence indicated "that the relationship was intended by the parties to be a counterfeit of marriage, in the melding of their financial affairs and the sharing of responsibilities and resources." *Id.* Therefore, this court held that "[b]efore the marriage, the house was simply joint tenancy property. When they married, the joint tenancy

property took on the additional character of marital property." *Id.*

In this case, the facts, viewed in the light most favorable to the judgment,[4] indicate that Ms. Booth and Mr. Greene intended the house to be their joint property. They looked for the house together, began living in the house at the same time, and treated the house as their joint home. When they bought the house and the adjoining real property, they titled them jointly, and both became liable for the mortgage. Indeed, even Ms. Booth testified that she and Mr. Greene were "50–50" partners when they bought the house, and that she "went into it as a joint venture, thinking this was a partnership."

The parties purchased the house and real property for $53,500. Although Mr. Greene did not contribute to the down payment, the closing costs, or the monthly mortgage payments, he paid the utilities, paid for over $16,000 in supplies to make improvements on the house, and contributed a greater amount of "sweat equity" to the maintenance and improvement of the house, both before and during the marriage. At the time of the dissolution, the fair market value of the house and real property was $117,700. By making the monthly payments and the down payments, Ms. Booth contributed $14,285.74 to the equity in the property. This is only a small part of the $64,200 increase in value of the property, however. The majority of the equity gain was due to the improvements, to which Mr. Greene contributed significantly.

As in *Cuda,* before Ms. Booth and Mr. Greene were married, the house and real property were joint tenancy property.[5]

---

**4.** In her characterization of the facts, Ms. Booth includes only those facts that are favorable to her. This is contrary to this court's standard of review, in that this court views the evidence in the light most favorable to the judgment and disregards all contrary evidence and inferences. *Hutcherson,* 909 S.W.2d at 404.

**5.** The fact that Ms. Booth and Mr. Greene did not purchase the house in contemplation of

After they married, "the joint tenancy property took on the additional character of marital property." *Id.* Therefore, this court finds that the trial court did not err in finding that the pre-marital increase in value of the house and real property was marital property, and in dividing it equally between the parties. Ms. Booth's second point is denied.

### No Abuse of Discretion in Division of Marital Residence

■ In her final point, Ms. Booth claims that the trial court erred in making an equal division of the marital residence. She asserts that: (1) the property was acquired prior to marriage; (2) there was no evidence that the parties intended to remarry at the time property was acquired or at the time improvements were made; (3) Ms. Booth paid the down payments and closing costs; (4) Ms. Booth made all mortgage payments; (5) Ms. Booth made significantly more of a financial contribution to the improvements of the property; (6) Ms. Booth and Mr. Greene made equivalent physical contributions to the improvement of the property. Ms. Booth contends that "[t]he trial court's equal division of the residence under the facts of this case is so patently unfair and inequitable that it shocks the conscience."

As discussed in the second point, the house and the surrounding real property were marital property. An appellate court will not reverse a division of marital property unless the trial court abused its discretion. *Hutcherson,* 909 S.W.2d at 406. The trial court is to divide the property "in such proportions as the court deems just." Section 452.330.1, RSMo 2000. In making such a division, the court is to consider "all relevant factors," including:

(1) The economic circumstances of each spouse at the time of the division of property is to become effective ...;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

Ms. Booth contends that the trial court did not give enough weight to factor (2), and gave too much weight to factor (4).

Again, Ms. Booth's characterization of the facts does not comply with the proper standard of review. The facts, in the light most favorable to the trial court's judgment and in deference to the trial court's credibility determinations, are that, while Ms. Booth may have made a greater financial contribution to the acquisition of the house, there was evidence to support a finding that Mr. Greene made substantial improvements to the property. In fact, Mr. Greene's improvements to the house increased the equity more than Ms. Booth's financial contributions. Additionally, Mr. Greene paid the utilities and paid for some of the supplies used to make the improvements to the house, which caused him to incur over $16,000 in credit card debt.

There was also substantial evidence to support the trial court's determination that the division of property was appropriate based upon Ms. Booth's conduct. Ms. Booth's attitude toward Mr. Greene was evidenced by her conduct at the hot tub party and by her belittling insults. Ms. Booth's lack of commitment to the mar-

marriage does not affect the analysis. *Cuda,* 906 S.W.2d at 759.

riage was the primary factor that led to the dissolution.

Under the facts of this case, an equal division of the marital residence is not clearly against the logic of the circumstances and it is not "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Wright*, 1 S.W.3d at 57. Therefore, this court finds no abuse of discretion. Ms. Booth's third point is denied.

The judgment of the trial court is affirmed, in part, and reversed and remanded, in part.

All concur.